UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THERESA SUE HOPPER,

                         Plaintiff,

v.

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                         Defendant.

Case # 16-CV-6573-FPG

DECISION AND ORDER

Theresa Sue Hopper ("Hopper" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 13, 14. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On October 22, 2012, Hopper applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 174-77. She alleged disability since February 1, 2008 due to chronic back and spine pain, arthritis and osteoarthritis, hearing issues, headaches, uterine prolapse with pain,

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

1

chronic fatigue, abdominal pain, an enlarged pituitary gland, herniated discs and a displaced nerve root with compression, tendonitis, anxiety, depression, and attention deficit disorder. Tr. 230-31. On October 23, 2014, Hopper and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Michael W. Devlin ("the ALJ"). Tr. 92-112. On February 26, 2015, the ALJ issued a decision finding that Hopper was not disabled within the meaning of the Act. Tr. 72-83. On July 20, 2016, the Appeals Council denied Hopper's request for review. Tr. 1-8. Thereafter, Hopper commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative

substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.    The ALJ's Decision**

The ALJ's decision analyzed Hopper's claim for benefits under the process described above. At step one, the ALJ found that Hopper had not engaged in substantial gainful activity since the alleged onset date. Tr. 74. At step two, the ALJ found that Hopper has the following severe impairments: adhesive disease and uterine prolapse with abdominal-pelvic pain, chronic low back pain, depression, and anxiety. Tr. 74-75. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 75-76.

Next, the ALJ determined that Hopper retains the RFC to perform sedentary work[3] with additional restrictions. Tr. 76-81. Specifically the ALJ found that Hopper can occasionally lift and carry 10 pounds and frequently lift and carry less than 10 pounds; can stand and walk at least two hours and can sit about six hours in an eight-hour workday; can occasionally push and pull 10 pounds, climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; can frequently finger bilaterally; can understand, remember, and carry out simple instructions and tasks; can occasionally interact with coworkers and supervisors and have contact with the public; can work in a low stress environment (*i.e.*, no supervisory duties, no

---

[3]    "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

4

independent decision-making required, no strict production quotas, minimal changes in work routine and processes, etc.); and can consistently maintain concentration and focus for up to two hours at a time. Tr. 76.

At step four, the ALJ found that Hopper cannot perform her past relevant work. Tr. 81. At step five, the ALJ relied on the VE's testimony and found that Hopper can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 81-82. Specifically, the VE testified that Hopper could work as a preparer and brake linings coater. Tr. 82. Accordingly, the ALJ concluded that Hopper was not "disabled" under the Act. Tr. 82-83.

## II. Analysis

Hopper argues that remand is required because the mental RFC assessment is not supported by substantial evidence.[4] ECF No. 13-1 at 17-19; ECF No. 15 at 1-5. Specifically, Hopper asserts that the ALJ erred by relying on his lay opinion instead of a medical opinion to create the mental RFC assessment. *Id.* The Court agrees.

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Thus, even though the Commissioner is empowered to make the RFC determination, "[w]here the medical findings in the record merely diagnose [the] claimant's . . . impairments and do not relate those diagnoses to specific residual

---

[4] Hopper advances other arguments that she believes warrant reversal of the Commissioner's decision. ECF No. 13-1 at 19-24. However, the Court will not address those arguments because it disposes of this matter based on the improper mental RFC assessment.

5

functional capabilities," the general rule is that the Commissioner "may not make the connection himself." *Id.* (citation omitted).

Here, the ALJ found at step two that Hopper's depression and anxiety are severe impairments. Tr. 74-75. The ALJ noted that Hopper described symptoms of depression and anxiety since her early teens that included "severe anxiety, flashbacks, forgetfulness, difficulty with concentration, and obsessive thoughts." Tr. 77.

The ALJ's decision discussed the medical source statement of Joseph P. Carlino, LCSW-R, which indicated that Hopper reported an agitated and anxious mood, feelings of guilt, insomnia, and difficulties with memory, attention, and concentration. Tr. 78 (citing Tr. 1502-10). Therapist Carlino also reported that Hopper experienced emotional lability, social withdrawal, motor tension, hyperactivity, distractibility, recurrent and intrusive recollections of a traumatic experience, recurrent obsessions, and feelings of worthlessness, anhedonia, and decreased energy. *Id.* Therapist Carlino opined as to Hopper's mental ability to perform unskilled work, but the ALJ afforded only "little weight" to that opinion. Tr. 78, 1507-08. Regardless of whether the ALJ properly discounted this opinion, his rejection of the only medical opinion as to Hopper's mental capacity created an evidentiary gap that requires remand. *See Stein v. Colvin*, No. 15-CV-6753-FPG, 2016 WL 7334760, at *4 (W.D.N.Y. Dec. 19, 2016); *House v. Astrue*, No. 5:11-CV-915 (GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (the ALJ's proper rejection of a medical opinion nonetheless necessitated remand because the absence of any other medical assessment created an evidentiary gap in the record).

Even though Therapist Carlino's assessment was the only opinion as to Hopper's mental ability to perform work-related functions on a regular and continuing basis[5] and the ALJ gave it

---

5     *See* S.S.R. 96-8p, Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *5-6 (S.S.A. July 2, 1996) ("Work-related mental activities generally required by

only "little weight," the ALJ somehow determined that Hopper can understand, remember, and carry out simple instructions and tasks; can occasionally interact with coworkers and supervisors and have contact with the public; can work in a low stress environment; and can consistently maintain concentration and focus for up to two hours at a time. Tr. 76. It is unclear to the Court how the ALJ, who is not a medical professional, was able to make this highly specific determination without reliance on a medical opinion. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor."). As a result, the Court finds that the mental RFC assessment is not supported by substantial evidence.

The Commissioner asserts that the State Agency single decision maker's ("SDM") assessment that Hopper's mental impairments are nonsevere constitutes substantial evidence in support of the mental RFC assessment. ECF No. 14 at 24-26 (citing Tr. 119-20). This "opinion," however, offers no insight into Hopper's ability to perform mental work requirements and indicates that there was "insufficient evidence to make a determination for this specific time period." Tr. 120. Moreover, the ALJ specifically found Hopper's depression and anxiety to be severe, and he declined to give any weight to the SDM assessment because it is "not medical or 'other source' evidence within the meaning of the Social Security Act and Regulations." Tr. 81.

Finally, instead of obtaining a medical opinion as to Hopper's mental impairments, the ALJ noted that although Hopper was "repeatedly encouraged to seek a psychiatric consultation, it does not appear that [she] ever sought treatment with a mental health specialist until the expiration of the insured status in December 2012." Tr. 77-78. Social Security Ruling 96-7p warns, however,

---

competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."); *see also* 20 C.F.R. § 404.1545(c) (the SSA will evaluate the claimant's ability to work on a "regular and continuing basis" when assessing his or her mental capacity).

that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." S.S.R. 96-7p, Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *7 (S.S.A. July 2, 1996) (effective July 2, 1996 to Mar. 28, 2016). In the mental health context, "[c]ourts have observed that faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a 'questionable practice.'" *Bick v. Colvin*, 14-CV-791S, 2016 WL 3995716, at *3 (W.D.N.Y. July 26, 2016).

Accordingly, for the reasons stated, the Court finds that the mental RFC assessment is not supported by substantial evidence and that remand is required. Because Hopper filed her application over five years ago, the Court directs the Commissioner to expedite the remand and review of this case.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 28, 2017
      Rochester, New York

                                            HON. FRANK P. GERACI, JR.
                                            Chief Judge, United States District Court

8